Our first case for argument today is 23-1337, the Secretary of Defense v. Pratt & Whitney. Mr. Cushner, please proceed. Thank you, Your Honor. Good morning, and may it please the Court. The Board committed two errors in resolving the government claims report. First, it allowed Pratt to significantly understate the material cost of collaborator parts, thus shifting a substantial amount of indirect costs from Pratt's commercial customers to the government. And second, the Board enforced an unauthorized and unenforceable agreement against the United States, even after finding correctly that the agreement violated the FAR. We ask the Court to reverse both of these errors on appeal. Can we start with the jurisdictional issue here in particular? Can you tell me your view on whether the CAS 418 issue and the drag issue are part of the same claim or separate claims? So there are two separate claims, Your Honor. What we've explained in our briefing is that those two claims involve different issues. CAS 418 is about allocability, and the drag credits issue is about allowability. They involve two different sources of law, the CAS versus the FAR, and they lead to two different remedies. The CAS 418 claim is about how to allocate costs among Pratt's commercial and government contracts, and the drag credits claim is about the size of the indirect cost pool that needs to ultimately be allocated. Is there any quantum that needs to be determined for the drag claim? I'm sorry, Your Honor. Is there any quantum that needs to be determined for the drag claim? Yes, I believe there would have to be a determination of quantum. So ultimately, there would have to be a determination of quantum by the Board. And it's a pretty complicated computation, right? It's a complicated computation on both claims, yes, Your Honor. So it would be a complicated computation on the CAS 418 claim as well as on the drag credits claim, which is why we think that the rule that this Court announced in Southern California Edison makes particular sense in this case. But that rule has never been applied in the Board context, right? That rule has never been applied in the Board context. I think you're correct, Judge Dagg. I'm not aware of a case applying Southern California Edison in the Board context. We don't think that matters because the final decision requirement comes from 28 U.S.C. section 1295A. And it's the same in 1295A.3, which applies to the Court of Federal Claims, and 1295A.10, which applies to Board decision. It's the same final decision requirement, and it should mean the same thing. Now, going back to the errors that the Board made here, as for the CAS 418 claim, we believe that the Court's decision in Rumsfeld resolves the issue because the Court there recognized that, quote, the sharing of gross revenues, end quote, is the cost of collaborator parts to crack under the collaboration agreements. That whole thing also makes sense because the task before the Board was to determine the cost to Pratt of procuring collaborator parts. Gross revenue share, or GRS, represents the true material cost of collaborator parts because it does not account for any unrelated obligations, any unrelated program expenses that collaborators owe to Pratt. Net revenue share, or NRS, infuses these unrelated obligations into the equation, and by doing so, misrepresents the full cost of collaborator parts to Pratt. Is there any concern with us potentially finding that there is no jurisdiction over the CAS 418 claim, but then going ahead and reaching the merits on the DRAD claim? Do you see any concerns with that, or what would you say in response to that possibility, that hypothetical resolution? So, and I think you're asking, Judge Cunningham, if the Court agrees with us that these are two separate claims. Yes. And that the DRAD credits claim was conclusively and finally resolved by the Board. Yes. But the CAS 418 claim was not. That is correct. That is correct. So I think there's a couple of issues with that. The first one would be I think that would be inconsistent with SCE, where the Court, under very similar circumstances, where a tribunal below – different tribunal, granted – but a tribunal below disagreed with the way the government is interpreting a statute or regulation. But that wasn't in the CDA context, and we have more on point cases in the Contract Disputes Act context, like the United Pacific Insurance v. Roche case. Yes. So how do you contend with that? I agree with you. SCE gives you some language that's helpful, but it's not in – it's analogous. It's not in the exact context of this case. And we have cases in the exact context of this case which seem to suggest otherwise. So how do we deal with that? So two things in that, Your Honor. In United Pacific, the case did not address the significance of SCE. None of the parties raised it. The Court didn't raise it. And so we don't know. So wait. So they didn't raise it, so you think I can just treat it as, therefore, bad precedent because the issue wasn't raised? So even though they spoke to the issue, you don't think because they raised the right argument I can just ignore it as precedent? I don't think you should ignore it as precedent, but you should take it as limited precedent with the limitation. But Teledyne and other cases deal with it explicitly, right, in the board context. I'm sorry. Which case? Teledyne. Teledyne. Well, Teledyne predates SCE. Well, but it hasn't been overruled, right? And SCE couldn't overrule it. It has not been overruled. It's true. But to the extent SCE says something different than Teledyne, we think SCE should govern. Why? I don't understand. You're like, because it's better for me. Why? We've got an earlier case that says something that doesn't help you. You've got SCE that says something that helps you. Then you've got a later case that's more on point that says something different but doesn't mention SCE. Why do you win? You're like an Oreo. I mean, I do prefer the vanilla over the chocolate sides, but you're bounded by precedent on both sides. It doesn't help you. Why should we just go with that one in the middle that you think is the most helpful for you when it's the least on point with the facts of this case? So we think the court should follow SCE not because it's better for us but because it makes the most sense. But it can't overrule Teledyne, right? It's true, Your Honor. It did not overrule Teledyne, but it does succeed Teledyne. What does that mean? I don't understand. It can't overrule it, but it succeeds it. What does that mean? It explains a more nuanced understanding of what finality is. So you think it distinguished Teledyne somehow? It didn't distinguish Teledyne, but it provided another variation of finality that was not discussed in Teledyne. And, Your Honor, if you think about the way this case is, we have not just the board disagreeing with the government's interpretation of CAST 418, but the board also disagreeing with Pratt's understanding of CAST 418 because Pratt advocated for the use of a completely different measure, MTC. But this part is jurisdictional. This is – right? This is jurisdiction? Yes. And what do I review that? I'm sorry? How do I review it? How?  De novo. So who cares whether the board disagreed with something they argued or what – because I'm reviewing this de novo. I've got to look at it and decide these questions as a matter of law. I agree. But this rule makes sense because at the end of the day, if this goes back to the board as a non-final decision and the parties spend years figuring out what quantum looks like for NRS, we will end up before the court with the same arguments year down the line. So more efficient. Your argument is it would be more efficient to have these two things handled together so that there isn't duplicative effort. That's your argument? That's like a toughie for jurisdiction because jurisdiction is like you have it or you don't, right? It's not like, well, it would be more efficient. You know how many people come up and ask me for advisory opinions on things? All the time. And I agree. In almost every case when they're asking for it, it's something that is most certainly going to come up below and it would be more efficient for the whole process if I went ahead and decided it. But jurisdiction doesn't usually let me do that. So I agree with that, too. The practical consideration is that it would be more efficient. But what the court said in SCE is that when a tribunal disagrees with the way the government reads an applicable federal statute or regulation, that is a final decision because it is a final determination that the government is misinterpreting a statute or regulation. And that's exactly what happened there. That would pretty much mean that in every case you could appeal entitlement without regard to the resolution of quantum. I don't think it would apply in every case. I think there could be distinguishable circumstances. A few cases in which there would be no final judgment. In which there would be no final judgment. But mostly there would be once there was an entitlement decision. So, Judge, I think that would depend on the facts of this case. But in this case. Is there any difference in this case in terms of the jurisdictional issue between the drag claim and the other claim if you view them as two separate claims? In terms of whether the court has jurisdiction? Yes. So because there are two distinct claims. Okay. But I'm assuming there are two distinct claims. But in each one the quantum hasn't been determined. Is there a jurisdictional difference between the two? Yes. And what is it? The jurisdictional difference is that the drag credits claim was not remanded back to the parties for a computation of quantum. That was finally resolved. The board denied the government's drag credits claim. As for the CAS 42. There's no sending it back for damages because the board said you don't get any. Exactly. They simply denied it outright. That claim is over. Nothing more for you to do with the board. That's right. So the court has jurisdiction under any reading of finality over the drag credits claim. The CAS 418 claim, again, we think it would be inconsistent with SCE if the court said it does not have jurisdiction. But the drag claim affects the overall computation, doesn't it? Yes. It does. So it factors in. There's no until there's a final determination. Sure. But, Judge, it only factors in if the board doesn't deny the claim. It only factors in if you win on the drag claim. That's right. Like, right now, the board's not going to take that into account on computation because they say you lose. Right. Right? So they're not going to factor it in. If they do a computation, the drag claim is not going to be part of what they say. Now, what should we give them under the drag claim? Right. So only if we overturn their finding on the merits of the drag claim do you get to go back and then argue how that impacts quantum. Yes, that's correct. Okay. I'll just say one final. On the drag claim, so your contention is that this agreement was improper under the FAR and isn't binding. So what, then, is your view as to how drag should be treated? As I understand it, your view is that it should be excluded from the overhead pool, correct? Drag should be subtracted from the overhead pool. That's correct. I'm getting a little signal from you. Nobody can hear you. You have to make that microphone be a little closer to you, like move your binder or something. Does that work? Yes. Much better. So assuming you win on that, how is drag to be treated, then? So drag is something that collaborators pay Pratt directly. I know what it is, yeah. But how should it be treated? It's excluded. Your view is it should be excluded from the overhead pool, right? It should be excluded from the indirect cost pools, including the overhead pool, yes. And then is drag treated as part of the parts cost? What, in your view, should be done with it? Nothing? Nothing. I mean, it's something that Pratt has already received payment for from its collaborators, so the government should not be paying for it in any part, and therefore it should be excluded. The failure to do that would violate the FAR's credits clause, and that's where the board got it wrong. The board applied the incorrect burden of proof on the government's obligation to prove a violation of the FAR credits clause because it required the government to match up individual line items within the indirect cost pool to the drag that Pratt received from its collaborator, and that's nowhere to be found in the FAR. Can you clarify for us the specific relief you are seeking, whether that would be a reverse on the drag claim or et cetera? Yes. So on the drag credits claim, we asked the court to reverse, first and foremost, the board's incorrect holding that the accord and satisfaction doctrine resolves the claim against the government. That was wrong because the accounting agreement, the only accord that's at issue, is not a valid government contract. It violates multiple FAR provisions. And then once the court does that, we are also asking the court to clarify what the burden of proof on the government is to prove a violation of FAR 31.201-5, which is the credits clause. If we agree with you on accord and satisfaction, does that end it, or do we have to reach that other issue? I think you would have to reach that other issue, Your Honor, because the board used the incorrect burden of proof, and if you simply reverse an accord and satisfaction and remand it back to them, they're going to do the same thing again. And so that's why we asked for the court to also clarify the burden of proof under the drag credits claim. Okay. You want to save some time for rebuttal? That would be great. Thank you. Mr. Hall? Thank you, Your Honor. Please support Jeff Hall for Pratt & Whitney. I'll start with jurisdiction. And I have two primary points, one of which may actually, it's an acknowledgment that may come as somewhat of a surprise to the court. But in following the questions, first of all, we felt duty-bound to let the court know about the precedent you've referred to concerning the decisions by a board addressing only entitlement not quantity. We see SCE as distinguished. It is not a CDA case. We acknowledge if the board were to extend it to a CDA case, there would be jurisdiction. Now, there are some authorities of this court that give some room under the CDA. Judge Moore, I think you alluded to them. They say it's not perfect congruence with the strict finality requirement that's applied in district court judgments. This is the Orlando Helicopters case and the Kinetic Builders case that we cite. And they are based on the congressional intent to make the CDA a relatively swift and inexpensive means of resolving disputes. That is proof enormously elusive here, but we still have a ways to go in resolving this dispute. And so in those cases, this court has looked at the posture of the case and whether, in light of the particular history of the case, there is some efficiency. This is one exception to the general rule, I think, Judge Moore, that you were referring to where it would always be efficient. Counsel, what do you think about the possibility that we would reach the merits on the drag claim but conclude that there is no jurisdiction with respect to the CAS 14 claim? Two thoughts on that, Judge Cunningham. First of all, we do maintain there is only one claim. The contracting officer's final decision asserted one claim, the CAS 14 violation for one remedy, one sum certain. The drag claim, that is part of the case. We acknowledge that the theory is part of the case, but the contracting officer didn't cite the regulation, the credits cause regulation, that that theory is based on, and there was no separate claim there. Maybe more importantly, under the Kinetic Builders case, there is only one operative set of facts here. Kinetic Builders said to determine the number of claims, you look at the contracting officer's final decision, and you ask, is there a separate set of operative facts? Are they unrelated set of operative facts, or are they related? And here they are clearly related. The drag claim has always been part of the CAS 418 claim, the drag theory. It has been referred to a claim by the board, but that does not determine it. There is one set of operative facts, and there was one claim stated in the contracting officer's final decision. So for that reason, we don't think there's two claims. Well, do you agree that the drag claim seems to turn on the validity of the accounting agreement? Do you agree with that? Not entirely. Do you agree with it in part? Yes. It is one of two independent grounds, though. The accounting agreement that they challenge is not an advance agreement, but that doesn't mean it's unenforceable as the board held. It is an enforceable contract supported by consideration that the government doesn't challenge. The government doesn't challenge consideration on appeal. But in addition, there is no evidence in the record. The board factually found this, based on testimony of witnesses on both sides, that there is any portion of drag, which is a fixed reduction in revenue share, and overhead reimbursed by the government. There was never any reconciliation. DCA auditor Hart testified to that, and Pratt's expert, Levan, testified to it. Can I take you back? You never sort of finished on jurisdiction. Yes. You were like building to something, and then we stopped short of that. So what were you going to say? Are you going to say the two claims stand or fall together on jurisdiction, or were you going to continue? What was your argument at the end of the day on that jurisdictional point? Two things, Your Honor. First, we do think the claims, we think there is one claim, and these two theories rise or fall together. Okay, but suppose I didn't agree with that. Yes. Then what happens with jurisdiction? Well, then we think the court should take jurisdiction. If the court extends SCE, we see the benefits and advantages that are identified in the Orlando helicopter case and the Connecticut builders case for the court taking jurisdiction of the entire matter at this point, given the factors that those cases say the court may look at in the jurisdiction concept in CEA cases. But we think, you know, right at the outset, we do think this would be an extension of the SCE case, but we think this precedent gives the courtroom to do it in the CEA context. But let's assume for the moment that they are two separate claims. Do you agree, then, applying the Teledyne line of cases rather than the SCE, that there would be finality with respect to the drag claim? Well, there would be, except the Teledyne case, Your Honor, has this competing set of cases, the Connecticut builders and the Orlando helicopters case, which do suggest explicitly a relaxed context for the finality determination in some CEA cases. We think we see the advantages. Do you think those would apply to the drag claim if they're treated as two separate claims? Yes, I think it would apply to the entire matter. The drag claim is a relatively small part of this, and the efficiency benefits and trying to advance the litigation would not be satisfied if the court were just to look at the drag claim. The CAS 418 issue is the one that would make jurisdiction make sense from the standpoint of efficient resources. Unless the court has other questions on jurisdiction, I will move to the GRS theory. GRS, gross revenue share, is a calculation. It is a calculation based on engine list prices. It is not based on actual prices. It is before a deduction of something called FIA. FIA, the record shows clearly, are enormous price discounts that Pratt Supplies provides to its airline customers because the market dictates that. And those discounts get passed on in the parts cost. Well, those discounts are taken out, and they are not revenue. The amount of those discounts included in GRS... They reduce the parts cost. Well, they reduce the revenue. They're not revenue to begin with, and they do reduce the amount that the collaborators are ultimately paid. Because they're not real revenue and they're not shared with collaborators, they're not part of the parts cost, and they totaled about $2 billion. And inclusion of these inflated amounts as the measure of the parts cost would produce distorted allocations. That's exactly what CAS 418 aims to prevent. And so the GRS is enormously inflated because it's not real revenue and it's not shared with collaborators, and therefore it doesn't satisfy RUMSTO. Why do you think NRS is a better measure than GRS for what Pratt actually pays for collaborator parts? Well, we do think NRS is better, but we think MTC...  Because NRS, Your Honor, does not include these price discounts, which Pratt does not receive as revenue and they are not shared with collaborators. So if the measure of the parts price is revenue share payments, GRS does not qualify. But I think maybe what the government would say in response to that is that if NRS was used, that forced the government to cover all indirect costs the contractor has for all of your both commercial and military segments. I think, I'm not sure, but I think Mr. Kushner is going to get up and tell me that afterwards. Well, that wouldn't be accurate if you did, Your Honor, because the difference between GRS and NRS is two things primarily. It is the FIA discounts, which are not revenue, and it is drag. And drag is part of the sharing of the joint venture-like responsibilities here. Your point is that the discounts reduce the actual parts cost. Yeah, they reduce the revenue before it's even shared, and revenue share... Well, you're making it too complicated. They reduce the parts cost, right? I guess I just resist the idea that they were part of the parts cost to begin with, but I agree with the mathematical effect, Your Honor. And the court in Rumsfeld, as you know better than probably anybody, said revenue share payments comprise the parts cost. The court did not say it's gross revenue share. And when the court said gross revenue share is consideration, it didn't say it's the exclusive consideration. It's undisputed that the collaborators provide many other things, including sharing in expenses and risks. So gross revenue share, we submit it's not revenue and it's not shared with the collaborators, and therefore... What happens to the drag costs? Assume you were to lose on the accorded satisfaction point. What happens to drag costs? There's nothing more to be done with them? No, there is, Your Honor. And there's been a failure of proof, and this burden of proof... What's the issue then? The issue is whether any amount of drag, which is a percentage share reduction in the revenue share, it's just a 3% or 4% reduction, actually covers specific, is meant to cover any specific overhead expenses that the government... Is your point that the government is not paying drag so it's not part of the parts cost? Our point is the government... Yes, that is true. And also it is true that there is no showing of any violation of the credits clause. There is no apportionment of drag and identification with any cost the government reimbursed DRAG for. And I do not believe the government has appealed or cited any authority in support of this burden of proof argument. The board found that drag was the shared obligation and that there was no evidence based on testimony of DCAA Auditor Hart and Ms. Levan for Pratt that there was no portion of drag was shown to be reimbursed by the government. That's a failure of the credits clause, which at the end of the day is the basis for this. The APA accordance... You're making it too complicated. I'm sorry. I'm asking you a simple question. Assuming you lose on the accordance satisfaction question, what happens to drag? Your view is that there's nothing more to be done with it at that point? If we lose on accordance satisfaction, we would be arguing on the credits clause, which is an independent obstacle the government faces on drag. That would be the immediate consequence, Your Honor. And the board filed and relied on both grounds in its decision. Two grounds to deny their drag's credit theory. I briefly, perhaps in a minute, would just like to reference our cross-appeal issue, which is MTC. And MTC is the negotiated estimate of parts. And the government says and the board held that MTC was inconsistent with Rumsfeld and CAS 418. And we submit that was an error of legal interpretation. Rumsfeld did not have... Just to be clear, we only reach your cross-appeal if we say we have jurisdiction over CAS 418, right? Yes, I agree. Making sure. And the... I'm sorry. The... Rumsfeld did not reach MTC. Pratt did not use MTC until two years after Rumsfeld was decided. The court held revenue share payments comprised parts of parts, but did not say that was the exclusive measure. And as to CAS 418... The problem is that MTC is an estimate. It's not an actual clause. That's correct, Your Honor. And the CAS recognizes there are times when you don't have a per-part price like we have here. For example, when the government furnishes material or a contractor furnishes material to the engine maker, there's no per-part invoice. Alternative measures can be used. That was the CAS 419 legislative history. Not adopted, but in not adopting it, the board said we agree and endorsed the accounting principles behind it. This is one of those cases where we don't have per-part prices, and revenue share payments will cause fluctuations that MTC will avoid. And CAS 418's purpose is consistent allocations based on a reasonable proportion of the causal beneficial relationship. Counsel, are you aware of any case law that would prevent us from reaching a different conclusion in terms of jurisdiction on the CAS 418 claim and the drag claim, assuming we think they're two separate claims? Not beyond what we've discussed and cited, Your Honor. I think we maintain that there are one claim, but I understand your premise is that there were two. And we think I don't have anything to add beyond what I've cited. If the Court has no further questions, I'll save the brief time for rebuttal. Very good. Thank you. Mr. Kushner, you have two minutes. Thank you. So I'll start with MTC. The board correctly resolved the MTC issue. It correctly held that MTC is not the material cost of collaborator parts because it would violate Rumsfeld. MTC is not revenue share. And in Rumsfeld, the Court clearly said that revenue share is the cost of collaborator parts because that's what the collaboration agreements provide. And as you correctly pointed out, Judge Dyke, MTC is not an actual cost, and the CAS requires an actual cost to be used. But did Rumsfeld ever consider whether CAS-compliant measures, aside from revenue share, existed? Well, it didn't because it doesn't matter. The collaboration agreements say that revenue share is the cost of collaborator parts. That's what the collaboration agreements provide. These are the same collaboration agreements in this case as they were in Rumsfeld. As long as that's the cost under the collaboration agreements, that's the cost that has to be used. Let me give you a hypothetical. Suppose this revenue share agreement said the cost of a part is $1,000, okay? And as a result of agreements with the airlines, eventually that cost is reduced to $800 because of a rebate. Are you still maintaining that under those circumstances the cost of the part is $1,000 rather than $800? So, Judge Dyke, I think your question is not so much about MTC. I think it's the difference between GRS and NRS, correct? So, if it's a true discount the way you described, and I think we're talking about FIA. If FIA is a true discount the way you described, then I think you would be correct because Pratt's cost is subject to the revenue that it receives from commercial customers. If that revenue goes down, revenue share goes down as well. Here's the problem with that. Number one, we don't have evidence about whether FIA really is akin to a discount. We've asked the board to get access to FIA agreements that Pratt has to figure out whether it really is a discount, and the board denied our motion to compel. That's number one. If we were to decide that this is a relevant issue, are you suggesting that we should say that there should be more discovery on this issue? You didn't raise that. Well, if it matters for the purpose of deciding whether NRS is appropriate, then perhaps there should be more discovery. But here's the second point, and I think it's also an important one. Even if FIA is treated as a simple discount, it still would not justify using NRS because NRS includes other program expenses other than FIA that are not a discount by any stretch of that word. But that seems like a separate issue. It is, Your Honor, but the board used NRS as the cost of collaborator parts. That means that everything subtracted from GRS to arrive at NRS would have to be a discount, and that's simply not true because drag, we know, is not a discount. It's not something that goes to commercial customers at all, whether as a rebate or as a discount. No, no, no, no. They don't see it. It's just the revenue sharing that results in a discount. To the extent that the revenue sharing results in a discount to the parts cost, that should reduce the parts cost. That's the simple argument that's being made. Well, sure, but everyone agrees, both us and Pratt agree, that FIA and drag are not directly related to the cost of revenue parts. Pratt has said that in the red brief multiple times. It said it on page 5 of the red brief with respect to FIA, and it said it on page 17, I believe, with respect to drag. So those costs are not directly related to the cost of collaborator parts, which is why a measure like NRS that allows Pratt to subtract both of those things, it cannot be the material cost of collaborator parts. Okay. Thank you, counsel. Thank you. We're going to give Mr. Hull three minutes for rebuttal because we went over with Mr. Kushner. But your rebuttal, as you, I'm sure, understand, is limited to the cross-appeal. Yes, Your Honor. Thank you. And I'll be brief. On MTC, in no sense did the Rumsfeld Court reach the issue. It was not presented. And it does not say, as I think one of the Court's questions suggested, that revenue share payments is the exclusive method. In 2006, the parties agreed, at the time Pratt settled Rumsfeld, that ultimately if there was a dispute concerning collaborator parts, Pratt would work with the government to either adopt revenue share payments or another CAS-compliant method. Both parties recognized not exclusive. Second, the collaboration agreements, I heard it said, don't answer the question either about the revenue share parts by themselves. They don't say that revenue share is the cost of parts. The collaboration agreements don't say that. And Rumsfeld said revenue share payments comprised the cost of parts, as the Court knows, didn't reach MTC. And unless the Court has other questions, those were the additional points limited to the cross-appeal. Thank you, Counsel. I thank both Counsel. This case is taken under submission. Thank you.